Revised March 14, 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 97-31345

—————————————

KESTUTIS ZADVYDAS,

Petitioner-Appellee,

versus

CHRISTINE G. DAVIS, U. S. IMMIGRATION
AND NATURALIZATION SERVICE,

Respondents-Appellants.

—————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

—————————————

ON REMAND FROM THE SUPREME COURT
OF THE UNITED STATES

March 12, 2002

Before GARWOOD, DAVIS and BARKSDALE, Circuit Judges.

PER CURIAM:

This habeas proceeding, in which petitioner-appellee Kestutis Zadvydas (Zadvydas), a resident alien, attacks his continued detention by respondent-appellant, Immigration and Naturalization Service (INS), when his unchallenged deportation could not be

carried out because no country had been found which would accept him, is again before us on remand from the Supreme Court.

The presently relevant procedural and factual background is generally stated in the opinion of the Supreme Court, *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), and in our prior opinion herein, *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir. 1999). We summarize that background as follows.

Zadvydas was born in 1948 in a displaced person camp in Germany. In 1956 he immigrated with his family to this country and became a resident alien, but never became a citizen. Based on his 1966 and 1974 New York convictions for attempted robbery and attempted burglary, the INS in 1977 instituted deportation proceedings against him. While these were pending Zadvydas was released into the community. In February 1982 the INS denied his motion for relief from deportation; a hearing in the deportation proceedings was set for later that year, but Zadvydas disappeared and over the next decade the INS failed to locate him. In 1987 he was arrested and charged in Virginia with possessing 474 grams of cocaine with intent to distribute. While on bail awaiting trial on this Virginia charge, Zadvydas fled to Texas. Several years later he surrendered to the authorities and in 1992 was convicted in Virginia on the cocaine possession with intent to distribute charge and sentenced to sixteen years' imprisonment, with six years suspended. After serving two years, Zadvydas was released on

2

parole in 1994 and was promptly taken into INS custody.  He admitted his past criminal history, conceded deportability and applied for relief from deportation under 8 U.S.C. § 1182(c).  In May 1994 the immigration judge denied relief from deportation and ordered Zadvydas deported to Germany, of which country Zadvydas had apparently indicated he was a citizen.  He did not appeal that decision, and remained in INS custody.

Later in 1994 Germany informed the INS that Zadvydas was not a German citizen and it would not accept him, and Lithuania likewise refused to accept him because he was neither a citizen nor a permanent resident of Lithuania.

Zadvydas, still in INS custody, filed the instant habeas proceeding under 28 U.S.C. § 2241 in September 1995, challenging his continued INS detention.  In October 1997 the district court held that, since Zadvydas "will never be deported because there is no place to send him", his continued "detention is violative of his constitutional rights to substantive due process."  *Zadvydas v. Caplinger*, 986 F.Supp. 1011, 1027 (E.D. La. 1997).[1]  The court

---

[1]The district court also ruled that 8 U.S.C. former § 1252(a) provided statutory authority for continued INS detention, that under that statute detention was mandatory for one such as Zadvydas who had been convicted of an aggravated felony unless he established that he was not a threat to the community and was likely to appear for scheduled hearings, and that Zadvydas "has not met his burden of proving that he is not a threat to the community and that he is likely to appear for scheduled hearings." *Id*. at 1024.  The court also noted that the INS had afforded Zadvydas an interview and file review to determine whether to release him on bond pursuant to the Transition Period Custody Rules of the Illegal

therefore ordered that Zadvydas be released from INS custody on conditions to be set by the court following a hearing.  Conditions were subsequently fixed by the court and Zadvydas was released pursuant thereto.[2]

---

Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA, § 303(b)(3)(B)), and had declined to release him because he had not shown that he is not a threat to the community and that he is likely to appear for scheduled hearings.  *Id*. at 1024 n.4. Zadvydas did not appeal that INS determination to the Board of Immigration Appeals (BIA).

In the district court, Zadvydas also challenged his deportation order and denial of relief from deportation under 8 U.S.C. § 1182(c) on due process and other grounds, and the district court rejected all such challenges.  *Id*. at 1020-23.  Zadvydas did not appeal or cross-appeal the district court's decision and never sought to renew in this Court any of such challenges.

[2]The conditions, which are apparently essentially those suggested by the INS, are the following:

"1)  A cash maintenance and departure bond is set in this matter in the sum of two thousand dollars.

2)  The petitioner Kestutis Zadvydas, or his family post said bond prior to, and as a condition of, his release.

3)  The petitioner report to the Immigration and Naturalization Service in Houston, Texas on a regular basis, at least once a month, and to advise said service of his whereabouts and address, along with any change of address.  In the event of a change of address petitioner is to report to the Immigration and Naturalization Service in the city in which he has relocated.

4)  Petitioner's brother-in-law, Juan Ferreira, is named as sponsor of Kestutis Zadvydas and is to remain as his sponsor until further notice from this court.

5)  That the petitioner is to obtain employment upon his release and is to advise the Immigration and Naturalization Service of any change in employment.

6)  The petitioner is to reside with his wife, Maria Ferreira Zadvydas in Houston, Texas and, in conjunction therewith, provide the Immigration and

4

The INS appealed to this Court.  We reversed.  *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir. 1999).  We held that the district court had habeas jurisdiction under section 2241.  *Id.* at 285-86. We further held that section 241 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231, was the governing statute respecting the complained of INS detention.  Section 241(a)(1) and (2), 8 U.S.C. § 1231(a)(1) and (2), provides that the Attorney General shall remove an alien within the "removal period," which it generally defines as the ninety days beginning when an order of removal becomes administratively final, when any judicial review thereof is completed, or when the alien is released from any non-immigration confinement, whichever is latest, and shall detain the alien during the removal period.  Section 241(a)(3), 8 U.S.C. § 1231(a)(3), provides that the alien, if not removed during the removal period, shall, pending removal, be subject to supervision under regulations prescribed by the Attorney General.  Section

---

Naturalization Service with the address of his residence.
7) The petitioner is to immediately notify the Immigration and Naturalization Services of any changes relative to the above requirements.
8) The petitioner shall provide proof to the Immigration and Naturalization Service of his having obtained health insurance coverage for himself within forty-five days of his release.
9) The petitioner shall be released thirty days from November 21, 1997, provided the above bond has been posted with the Immigration and Naturalization Service."

At no time subsequent to the fixing of these conditions has the INS challenged their adequacy or propriety.

5

241(a)(6), 8 U.S.C. § 1231(a)(6), provides:

> "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

We held that section 1231(a)(6) authorized the INS to detain Zadvydas following the removal period and until his removal could be effected,[3] and that INS regulations provided for his release on conditions in the interim if it were determined that he was not a threat to the community and was likely to comply with the removal order, and for such determinations to be made periodically or on changed conditions as well as on written request of the alien, with opportunity for review by the Board of Immigration Appeals in the latter event. *Id.*, 185 F.3d at 287 & n.9.

Respecting the district court's conclusion that Zadvydas "will never be deported because there is no place to send him," we reviewed the INS's efforts to effectuate his deportation both before and since the filing of the habeas action as well as during the pendency of the appeal, and we considered various still unresolved or unexplored apparently potential opportunities in this respect. *Id.*, 185 F.3d at 284, 291-94. We stated that it could

---

[3]We noted that Zadvydas was "removable under [8 U.S.C.] section . . . 1227(a)(2)" as having been convicted of an aggravated felony or a controlled substance violation.

6

*not* "now be said with any real assurance that Zadvydas 'will never be deported'", and that "locating a country to which Zadvydas may be deported has been and will be difficult at best; but that there is no meaningful possibility of doing so has not been clearly established." *Id*. at 291. We concluded in this respect by stating: "judicial intrusion should not be considered, particularly where there are reasonable avenues for parole, until there is a more definitive showing that deportation is impossible, not merely problematical, difficult and distant." *Id*. at 294.[4] We accordingly rejected Zadvydas's claim that his continued detention under section 1231(a)(6) violated his substantive due process rights, and held that under section 1231(a)(6) "the government may detain a resident alien based either on danger to the community or risk of flight while good faith efforts to effectuate the alien's deportation continue and reasonable parole and periodic review procedures are in place." *Id.*, 185 F.3d at 297.[5] We therefore

---

[4]We continued by stating "it is certainly no clearer here that Zadvydas will 'never be deported because there is no place to send him' than it was respecting the aliens in *Gisbert [v. U.S. Attorney General*, 988 F.2d 1437 (5th Cir. 1993)]." *Id.*

[5]We relied in large part on *Shaughnessy v. United States ex. Rel. Mezei*, 73 S.Ct. 625 (1953), and our decision in *Gisbert v. U.S. Attorney General*, 988 F.2d 1437 (5th Cir. 1993), though recognizing that those cases each involved excludable aliens held at the border, or only paroled into the country, while Zadvydas was a resident alien. 185 F.3d at 290, 294-97. We held that that distinction was not determinative in the present context since Zadvydas was subject to a lawful and final order of deportation and his detention was not punitive but rather was in connection with and in furtherance of the INS's good faith efforts to carry out

7

reversed the district court's grant of habeas relief.[6]

The Supreme Court granted Zadvydas's petition for writ of certiorari, *Zadvydas v. Underdown*, 121 S.Ct. 297 (2000), consolidated the case with *Ashcroft v. Ma*, in which review was granted of the decision in *Ma v. Reno*, 208 F.3d 815 (9th Cir. 2000), and ultimately "vacate[d] the decisions below and remanded both cases for further proceedings consistent with this opinion." *Zadvydas v. Davis*, 121 S.Ct. 2491, 2505 (2001).

The Court held that the district court had habeas jurisdiction under section 2241, *id*. 121 S.Ct. at 2497-98, and that post-removal period INS detention was authorized and governed by section 1231(a)(6). *Id*. at 2495, 2496. The Court described the basic question before it and its ultimate holding as follows:

> ". . . we must decide whether this post-removal-period statute [§ 1231(a)(6)] authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal. We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question. . . . Based on our conclusion that indefinite detention of aliens in the former category would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal court review."

that order. *Id*.

[6]We stayed our mandate pending potential Supreme Court review. Our opinion had noted that "[w]hile this appeal has been pending, Zadvydas seems to have complied with the district court's release conditions and has apparently conducted himself as a productive member of society." *Id*., 185 F.3d at 284.

8

*Id*. at 2495.

. . .

. . . the statute [§ 1231(a)(6)], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id*. at 2498.

. . .

. . . interpreting the statute [§ 1231(a)(6)] to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id*. at 2503.

In its discussion of constitutional concerns, the Court noted that section 1231(a)(6) "does not apply narrowly to 'a small segment of particularly dangerous individuals' [citation omitted], say suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations." *Id*. at 2499. *See also id.* at 2502 ("Neither do we consider terrorism or other special circumstances where special arguments might be made for forms of preventive detention and for heightened deference to the judgment of the political branches with respect to matters of national security."). The Court also noted that "we nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violation of those conditions." *Id*. at 2501 (citing 8 U.S.C. §§ 1231(a)(3) and 1253). *See also id*. at 2502 ("The choice, however, is not between

9

imprisonment and the alien 'living at large' [citation omitted].

It is between imprisonment and supervision under release conditions

that may not be violated").[7]

The Court then describes the habeas court's task in a case

such as this, viz:

> "The habeas court must ask whether the detention in
> question exceeds a period reasonably necessary to secure
> removal.  It should measure reasonableness primarily in
> terms of the statute's basic purpose, namely assuring the
> alien's presence at the moment of removal.  Thus, if
> removal is not reasonably foreseeable, the court should
> hold continued detention unreasonable and no longer
> authorized by statute.  In that case, of course, the
> alien's release may and should be conditioned on any of
> the various forms of supervised release that are
> appropriate in the circumstances, and the alien may no
> doubt be returned to custody upon a violation of those
> conditions. . . .  And if removal is reasonably
> foreseeable, the habeas court should consider the risk of
> the alien's committing further crimes as a factor
> potentially justifying confinement within that reasonable
> removal period." *Id*. at 2504.

The Court further noted that "we think it practically

necessary to recognize some presumptively reasonable period of

detention," *id*., declined to hold that such presumptively

reasonable period ended with the end of the removal period, *id*. at

2505, and instead chose a six month period (apparently beginning

with the beginning of the removal period), stating:

> "After this 6-month period, once the alien provides good

---

[7]In its discussion of the constitutional concerns, the Court also observed that *Shaughnessy v. United States ex rel. Mezei*, 73 S.Ct. 625 (1953), was not controlling because it dealt with aliens who had been stopped at the border, and had not effected entry into the United States, 121 S.Ct. at 2500, 2501.

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 2505.

The Court concluded by turning to our prior opinion and stating:

"The Fifth Circuit held Zadvydas' continued detention lawful as long as 'good faith efforts to effectuate . . . deportation continue' and Zadvydas failed to show that deportation will prove 'impossible'. . . . But this standard would seem to require an alien seeking release to show the absence of *any* prospect of removal–no matter how unlikely or unforeseeable–which demands more than our reading of the statute can bear." *Id*

On our further consideration of this case consistently with the Supreme Court's opinion, we note that when Zadvydas filed his habeas petition he had been in INS custody more than six months *after* the expiration of the removal period and when the district court's decision was rendered he had been in such custody several months in excess of three years after the expiration of the removal period. Considering the record and the matters recited in the district court's opinion, in the prior opinion of this court and in the Supreme Court's opinion (nothing relevant since then having been called to our attention), we conclude that Zadvydas has "provide[d] good reason to believe that there is no significant

11

likelihood of removal in the reasonably foreseeable future" and that the INS has not "rebut[ted] that showing", particularly given that "as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Accordingly, we conclude that our prior disposition is inconsistent with the opinion of the Supreme Court and the district court's judgment ordering that Zadvydas be released is not ultimately in error.[8]

We therefore now withdraw our prior opinion and affirm the judgment of the district court with the modification that it shall not of itself preclude the INS from seeking to return Zadvydas to INS custody (if that be otherwise shown to be appropriate) upon a showing that, on the basis of matters transpiring after the decision of the Supreme Court herein,[9] there has then become a substantial likelihood of removal in the reasonably foreseeable future (shrunken as above indicated) or from seeking a modification of the conditions of his release on the same basis (or on the basis of some other material change in conditions since the decision of

---

[8]The district court's finding that Zadvydas will never be deported because there is no place to send him plainly and necessarily includes a finding that he will not be removed in the reasonably foreseeable future. We also note that the INS has never, so far as we are aware, claimed that Zadvydas is or was a terrorist or part of any threat to the national security or that he has violated any of his release conditions.

[9]For example, the Supreme Court noted that as of the time of its decision Zadvydas's Lithuanian citizenship "reapplication is apparently still pending." *Id.*, 121 S.Ct. at 2496.

12

the Supreme Court).

JUDGEMENT AFFIRMED AS MODIFIED